ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| SUCESIÓN DE AVELINO VARGAS VÁZQUEZ<br><br>Parte Apelada<br><br><br>v.<br><br><br>**LUIS VARGAS VÁZQUEZ, NYDIA MEDINA LÓPEZ, POR SÍ, Y LA SOCIEDAD DE GANANCIALES COMPUESTA POR AMBOS**, Y OTROS<br><br>Parte Apelante | TA2026AP00162 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2021CV00244<br><br>Sobre: Daños |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Monge Gómez y la Jueza Prats Palerm.[1]

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de junio de 2026.

Compareció ante este Tribunal la parte apelante, el Sr. Luis Vargas Vázquez, la Sra. Nydia Medina López y la sociedad legal de gananciales compuesta por ambos (en adelante, los "Apelantes"), mediante un recurso de apelación presentado el 16 de febrero de 2026. Nos solicitaron la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao (en adelante, "TPI"), el 14 de enero de 2026 y notificada al día siguiente. Mediante el referido dictamen, el foro de primario declaró "Ha Lugar" la "**Demanda**" presentada en su contra y ordenó el pago de ciento veintitrés mil quinientos treinta dólares con diez centavos ($123,530.10), más los intereses legales correspondientes.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

---

[1] De conformidad con la OATA-26-0045, se designó a la Hon. Giselle Romero García, en sustitución del Hon. Felipe Rivera Colón, toda vez que este último dejó de ejercer funciones como juez de apelaciones, efectivo el 4 de mayo de 2026

## I.

El caso ante nuestra consideración tuvo su génesis el 12 de marzo de 2021, cuando la Sucesión Avelino Vargas Vázquez, compuesta por sus miembros: (1) Zoé Vargas Román, (2) Irma Vargas Román y (3) Avelino Vargas Román (en adelante y en conjunto, la "Sucesión Vargas Vázquez" o "Apelados")[2], presentaron una "**Demanda**" en contra de los Apelantes sobre restitución de fondos y daños y perjuicios. En la misma, alegó la Sucesión Vargas Vázquez que el Sr. Luis Vargas Vázquez, hermano del fenecido, retiró una suma ascendente a ciento veintitrés mil quinientos treinta dólares con diez centavos ($123,530.10) de la cuenta de Banco Popular de Puerto Rico (en adelante, "BPPR") número 711-295033, cuyo titular era el causante. Indicaron que, debido a que el Sr. Avelino Vargas Vázquez residía en la República Dominicana, añadió a su hermano como persona autorizada para que tuviera acceso a depósitos o retiros en caso de emergencias relacionadas a sus hijos, quienes residían en Puerto Rico. Adujeron que el retiro de los fondos luego del fallecimiento de su padre y sin la autorización de los herederos, configuró un enriquecimiento injusto. Por lo que, solicitaron que se restituyera la cantidad correspondiente al caudal, más los intereses acumulados; además, o en la alternativa, que se otorgara una suma de setenta y cinco mil dólares ($75,000.00) a cada co-demandante por los daños sufridos.

Por su parte, el 5 de mayo de 2021, los Apelantes presentaron su "**Contestación a Demanda**". En esta señalaron que el Sr. Luis Vargas Vázquez también figuraba como titular de la cuenta. Por ello, para el mes de febrero de 2019, realizó los retiros como era de costumbre. Aclararon que los herederos tenían conocimiento de las transacciones, toda vez que los fondos se utilizaron para cubrir el traslado y los gastos fúnebres del finado, entre otros trámites relacionados a las gestiones de la herencia. Informaron que los bienes depositados en la cuenta corresponden a los años de labor y negocios que estos compartieron durante el transcurso de

---

[2] Posteriormente, el 2 de agosto de 2021, el TPI admitió como co-demandantes a la Sra. María Genara Rivera Báez, viuda del causante, por sí y en representación de sus hijos menores Avel Vargas Rivera y Amanda Vargas Rivera.

su vida. Detallaron que, durante el tiempo que la cuenta estuvo activa, el causante no incluyó a ninguno de sus hijos como titulares o administradores de la cuenta.

Luego de varios trámites procesales impertinentes a la controversia que nos ocupa y de celebrado el juicio en su fondo, el 14 de enero de 2026, el TPI emitió una *Sentencia* a través de la cual declaró "Ha Lugar" la "**Demanda**". Específicamente concluyó que, a la luz de lo resuelto en <u>BBVA v. S.L.G. López, Sasso</u>, 168 DPR 700 (2006), a pesar de que ambos hermanos figuraban como titulares de la cuenta, durante el juicio se demostró que los fondos depositados eran provenientes del Sr. Avelino Vargas Vázquez. Es decir, los Apelantes no presentaron pruebas fehacientes de que del señor Vargas Vázquez haya aportado a los fondos depositados en la cuenta. El foro primario determinó que la actuación del señor Vargas Vázquez se limitó a realizar retiros que fueran ordenados o autorizados por el causante. Más aún, indicó que el mero hecho de asistencia en un negocio familiar no crea, por sí solo, un derecho a participación en el mismo ni otorga titularidad sobre los fondos derivados del negocio, ante la ausencia de una distribución de ganancias o participación. Por último, precisó que, analizada la totalidad de la prueba, no surgió evidencia alguna de los fondos fueran utilizados para pagar el transporte del cadáver o los gastos fúnebres.

Sobre los daños alegados por los Apelados, el foro *a quo* estableció que la existencia de angustias mentales no se probó con el grado de certeza requerido. Agregó que, a pesar de que el señor Vargas Román sufrió depresión tras la muerte de su padre, no se presentó prueba de que la causa fuera atribuible al retiro de los fondos. Explicó que la mera expresión del malestar o la tristeza experimentada no resultó suficiente, máxime ausente un nexo causal de que fueron padecidas a raíz de la conducta imputada a Don Luis.

Inconformes con lo anteriormente resuelto, los Apelantes acudieron ante este Tribunal mediante el recurso de epígrafe, en el que señalaron la comisión de los siguientes errores:

PRIMERO: Cometió error el Honorable Tribunal de Instancia al concluir que la prueba presentada por la parte demandante rebatió la presunción de que el dinero depositado en la cuenta de Banco Popular de Puerto Rico, terminada en el número 5033 pertenecía a ambos depositantes.

SEGUNDO: Incurrió en error la Sala de Instancia en su apreciación de la prueba al determinar que el dinero depositado en la cuenta de Banco Popular era únicamente propiedad de Don Avelino.

TERCERO: Incidió la Honorable Jueza del Tribunal de Primera Instancia al no adjudicarle créditos a la parte demandada por las cantidades de dinero que le fueron entregadas a la parte demandante para los gastos funerarios de Don Avelino Vargas y para gastos legales.

El 28 de junio de 2026, la Sucesión Vargas Vázquez presentó su "**Alegato de la Parte Apelada en Oposición a Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic, 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de

Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 341, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que

apoye su determinación". <u>Gómez Márquez *et al.* v. El Oriental</u>, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. <u>Íd</u>.

**B.**

La Ley Núm. 55 de 12 de mayo de 1933, conocida como "Ley de Bancos", 7 LPRA sec. 1 *et seq.*, aunque regula las instituciones bancarias, no define la naturaleza de la relación entre el banco y el depositante. <u>BBVA v. SLG López, Sassó</u>, 168 DPR 700, 710 (2006). Sin embargo, nuestro Tribunal Supremo determinó que la relación entre estos se define como un contrato de préstamo, toda vez que el banco tiene el deber de guardar y restituir el bien depositado. <u>Portilla v. Banco Popular</u>, 75 DPR 100, 113 (1953). En ese sentido, el depositante pierde la titularidad de lo depositado y se configura un derecho de crédito contra el depositario. <u>Íd</u>.

Ahora bien, en lo referente a la titularidad de la cuenta conjunta, nuestro máximo foro concluyó que "existe una presunción rebatible de que el dinero depositado en la cuenta le pertenece indistintamente a los codueños de la cuenta". <u>BBVA v. SLG López, Sassó</u>, *supra*, pág. 712. Entonces, el peso de la prueba "recae sobre cada uno de los depositantes", ya que éstos se encuentran en mejor posición para establecer la titularidad de los fondos, en la proporción o cantidad correspondiente. <u>Íd</u>. Lo anterior requiere que se establezca mediante preponderancia de la prueba. <u>Íd</u>., pág. 713.

Para rebatir la presunción aplicable, quien pretenda cuestionarla, debe demostrar: (1) los términos del contrato con la institución financiera; (2) la intención de las partes al establecer la cuenta; (3) el control que ejerce el deudor sobre la cuenta conjunta; (4) los estados de cuenta que permitan trazar el origen del dinero y su movimiento; (5) el propósito para el cual fue creada la cuenta conjunta; (6) el conocimiento que tenga el deudor sobre los movimientos realizadas en la cuenta; (7) a nombre de quién aparecen los cheques; (8) quién está autorizado para firmarlos; y (9) cualquier otra evidencia que el tribunal estime necesaria y apropiada. <u>Íd</u>., pág. 715.

**III.**

En el presente caso, los Apelantes nos solicitaron que revoquemos la *Sentencia* del TPI en la que se declaró "Ha Lugar" la "**Demanda**" objeto de esta controversia. Por estar íntimamente relacionados, discutiremos los primeros dos señalamientos de error de manera conjunta. En síntesis, el señor Luis Vargas Vázquez arguye que el TPI erró al: (1) concluir que la prueba de los Apelados rebatió la presunción de que el dinero de la cuenta de BPPR pertenecía a ambos depositantes y (2) al determinar que el dinero depositado en dicha cuenta pertenecía únicamente al causante.

En su *Sentencia*, el foro primario determinó que los fondos depositados en la cuenta bancaria provinieron de la venta del supermercado Debaví Cash & Carry (en adelante, "supermercado Debaví"), el cual pertenecía al señor Avelino Vargas Vázquez y a su entonces esposa, la señora Emilia Román Sánchez. Específicamente, el dinero generado por esta venta se depositó en una cuenta de inversión en Franklin Templeton, que posteriormente fue liquidada, y cuyo remanente se depositó en la cuenta objeto de esta controversia. En ambas cuentas, el causante añadió a su hermano como persona autorizada. Sin embargo, nunca se produjo evidencia de que el señor Luis Vargas Vázquez haya realizado algún depósito a su nombre. Más bien, la prueba desfilada en juicio lo único que estableció fue que las transacciones realizadas por éste, eran para suplir las necesidades u órdenes del fenecido.

Según los Apelantes, el capital originado para los depósitos en estas cuentas proviene de los negocios realizados en conjunto con sus familiares. En particular, el señor Luis Vargas Vázquez alegó que aportó dinero para la construcción del supermercado Debaví y por consecuencia, los fondos generados en la venta del establecimiento forman parte de su participación. Sostuvo que el causante, aun pudiendo designar a algunos de sus hijos como persona autorizada, no lo hizo porque entendía que el dinero depositado le correspondía en parte por su labor en el supermercado.

Conforme a lo resuelto por nuestro máximo foro judicial, existe una presunción rebatible de que el dinero depositado en una cuenta conjunta pertenece indistintamente a los titulares de la cuenta. BBVA v. SLG López,

Sasso, *supra*. El peso de la prueba "recae sobre cada uno de los depositantes", ya que estos se encuentran en mejor posición para establecer la titularidad de los fondos, en la proporción o cantidad correspondiente. Íd. Para ello, se podrá tomar en consideración: (1) los términos del contrato con la institución financiera; (2) la intención de las partes al establecer la cuenta; (3) el control que ejerce el deudor sobre la cuenta conjunta; (4) los estados de cuenta que permitan trazar el origen del dinero y su movimiento; (5) el propósito para el cual fue creada la cuenta conjunta; (6) el conocimiento que tenga el deudor sobre los movimientos realizadas en la cuenta; (7) a nombre de quién aparecen los cheques; (8) quién está autorizado para firmarlos; y (9) cualquier otra evidencia que el tribunal estime necesaria y apropiada. Íd.

Analizada la prueba que obra en el expediente, en conjunto con la transcripción de la prueba oral, debemos colegir que el foro de instancia actuó correctamente en su determinación. No cabe duda de que tanto el negocio Johazoe, como el supermercado Debaví, fueron operados por la familia del señor Avelino Vargas Vázquez y el señor Luis Vargas Vázquez. Del testimonio del señor Luis Vargas Vázquez surge que entre todos los familiares aportaron para la construcción del supermercado.[3] Igualmente, la señora Nydia Medina López, verbalizó que la estructura conllevó una gran cantidad de dinero, esfuerzo y trabajo.[4]

Por otro lado, la prueba de los Apelados demostró que el señor Luis Vargas Vázquez nunca estuvo involucrado en ninguna de las labores concernientes al supermercado Debaví.[5] Cabe destacar que, a la fecha de la construcción del inmueble, los hijos del señor Avelino Vargas Vázquez tenían las edades aproximadamente entre 6 a 10 años. Por lo que, su participación ocurría luego del horario escolar.[6]

No existe controversia en que, luego de la venta del establecimiento, el causante depositó el dinero en una cuenta de Franklin Templeton.

---

[3] *Véase*, Transcripción de la Prueba Oral, pág. 335. líneas 4-7.
[4] *Véase*, Transcripción de la Prueba Oral, pág. 277, líneas 1-4.
[5] *Véase*, Transcripción de la Prueba Oral, págs. 34, 37, 193 y 232.
[6] Véase Transcripción de la Prueba Oral, pág. 16, línea 1; pág. 101, líneas 1-4.

Posteriormente, el 28 de mayo de 2015, los fondos de dicha cuenta fueron depositados en una cuenta perteneciente al BPPR. Más adelante, el 5 de junio de 2015, se incluyó al señor Luis Vargas Vázquez como codepositante. Según el testimonio de los Apelados, el señor Luis Vargas Vázquez era el representante del fenecido para pagar la pensión excónyuge dirigida a la señora Emilia Román Sánchez.[7] Además, surgieron otros retiros realizados por el señor Avelino Vargas Vázquez.[8] Nótese que, no hubo ningún otro depósito en esta cuenta.[9]

Ahora bien, conforme a la escritura de compraventa del 25 de marzo de 1997, otorgada ante el notario Félix R. Santiago Rodríguez, surge que los dueños del establecimiento son el señor Avelino Vargas Vázquez y la señora Emilia Román Sánchez.[10] Más aun, del testimonio desfilado por los Apelantes, apreciamos que ninguno especificó cantidad alguna que fuera entregada para la construcción del supermercado Debaví. No podemos perder de perspectiva que era el deber de los Apelantes presentar la evidencia o rebatir aquella presentada por los Apelado que estableciera la titularidad de los fondos, en la proporción o cantidad correspondiente mediante preponderancia de prueba. Por otro lado, a pesar de haber indicado que los fondos depositados en la cuenta de BPPR también le correspondían al señor Luis Vargas Vázquez, los Apelantes no demostraron actos posesorios sobre estos. Es decir, se demostró que los retiros realizados fueron conforme a la solicitud y orden del causante.

Luego de evaluar el expediente ante nuestra consideración, con especial atención a la TPO de los testimonios vertidos en el juicio, estamos convencidos de que la prueba presentada no estableció que el señor Luis Avelino Vargas tuviera participación o que fuera titular de los fondos provenientes de la venta del supermercado Debaví. Por tanto, es forzoso concluir que los fondos pertenecían íntegramente al señor Avelino Vargas Vázquez. Así pues, no existe en el expediente indicador alguno que apunte

---

[7] Véase Transcripción de la Prueba Oral, págs. 64-65; pág. 79; pág. 122; pág. 165; pág. 198.
[8] Véase Transcripción de la Prueba Oral, pág. 144; pág. 198.
[9] Véase Transcripción de la Prueba Oral, pág. 175.
[10] Véase Entrada 117 SUMAC, Exhibit III.

a que la juzgadora de instancia actuó movida por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas.

En su última imputación de error, los Apelantes señalaron que el foro de instancia erró al no adjudicarle los créditos por los pagos realizados para cubrir los gastos fúnebres del señor Avelino Vargas Vázquez. Sobre ello, los Apelantes detallaron que, para febrero de 2019, se retiró una suma ascendiente a trece mil cien dólares ($13,100.00) para cubrir los gastos funerarios. Posteriormente, los hijos del fenecido solicitaron un adelanto de siete mil quinientos dólares ($7,500.00) para realizar los procesos relacionados a la herencia. Insistieron en que la cantidad total retirada ascendía a ciento diez mil dólares ($110,000.00), mas no la suma de ciento veintitrés mil quinientos treinta dólares con diez centavos ($123,530.10) que les fue imputada por el TPI.

Conforme a la *Resolución* sobre la declaratoria de herederos del causante emitida el 26 de noviembre de 2019, el señor Avelino Vargas Vázquez falleció el 26 de febrero de 2019.[11] Ahora bien, según surge de los estados de cuenta que obran en el expediente ante nos, la cuenta reflejó varios retiros en las siguientes fechas, para un total de ciento veintitrés mil seiscientos dólares ($123,600.00):

1 de marzo de 2019 – retiro por $2,000.00
6 de marzo de 2019 – retiro por $2,000.00
7 de marzo de 2019 – retiro por $1,500.00
7 de marzo de 2019 – retiro por $3,800.00
8 de marzo de 2019 – retiro por $3,800.00
14 de marzo de 2019 – retiro por $500.00
18 de marzo de 2019 – retiro por $110,000.00[12]

Según surgió del testimonio del señor Luis Vargas Vázquez, éste realizó un pago para cubrir los gastos aéreos del fenecido.[13] Además, se cubrieron los gastos fúnebres del señor Avelino Vargas Vázquez.[14] Del mismo modo, tanto la señora Johanna Vargas Medina, como la señora Deborah Vargas Medina, indicaron que se entregaron ciertas cantidades

---

[11] *Véase*, Entrada Núm. 117 SUMAC-TPI, Exhibit I.
[12] Íd., Exhibit VIII, pág. 2.
[13] *Véase*, Transcripción de la Prueba Oral, pág. 342.
[14] *Véase*, Transcripción de la Prueba Oral, pág. 343.

de dinero para cubrir los gastos de la ambulancia aérea y la declaratoria de herederos.[15] Posteriormente, especificaron que la señora Irma Vázquez le solicitó que retirara una suma ascendiente a $7,500.00 de la referida cuenta para realizar las gestiones sobre la declaratoria de herederos.[16]

Por su parte, los Apelados indicaron que no tenían conocimiento de dónde provinieron los fondos para cubrir tales pagos. El señor Avelino Vargas Román verbalizó que no tenía conocimiento dado a que no trabajó estos trámites.[17] Igualmente, la señora Irma Vargas Román testificó sobre su desconocimiento acerca de la procedencia de los fondos para cubrir dichos gastos.[18] Empero, luego aclaró que le solicitó a los Apelantes que le facilitaran el dinero para comenzar con los procesos de la declaratoria de herederos.[19]

Nótese que, a pesar de que la señora Irma Vargas Román reconoció que solicitó un adelanto para tramitar la declaratoria de herederos, lo cierto es que los Apelantes no especificaron las fechas en las que ocurrieron estos retiros o cuáles fueron las cuantías retiradas para alcanzar la suma solicitada por la heredera. El expediente tampoco contiene una copia de los recibos de gastos aéreos o fúnebres para respaldar su planteamiento sobre un retiro ascendiente a $13,100.00. Es decir, del expediente no se proporcionan detalles que permitan determinar que las cantidades retiradas por el señor Luis Vargas Vázquez durante el mes de marzo respondieron a la solicitud de alguno de los Apelados. Ciertamente, no estamos en posición para otorgar un crédito que se deba sustraer de la suma que el TPI ordenó restituir. Por tanto, resulta forzoso concluir que el foro primario actuó correctamente.

A base de lo anterior, reiteramos que el foro apelado no erró en su determinación final. De la prueba que obra en el expediente no se puede concluir que los fondos depositados en la cuenta de BPPR también le correspondían al señor Luis Vargas Vázquez. Asimismo, tampoco

---

[15] *Véase*, <u>Transcripción de la Prueba Oral</u>, págs. 302 y 368.
[16] *Véase*, <u>Transcripción de la Prueba Oral</u>, pág. 304 y 373.
[17] *Véase*, <u>Transcripción de la Prueba Oral</u>, pág. 125.
[18] *Véase*, <u>Transcripción de la Prueba Oral</u>, pág. 221.
[19] *Véase*, <u>Transcripción de la Prueba Oral</u>, pág. 455.

podemos precisar que las sumas retiradas de la cuenta, luego de la muerte del causante, corresponden a los gastos fúnebres, de traslado aéreo y de trámites de la declaratoria de herederos, según se alega. Reiteramos, pues, que corresponde sostener la determinación del foro de instancia.

**IV.**

Por los fundamentos que anteceden, los cuales se hacen formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones